IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ERIC M. LAPP,

        Plaintiff,

v.                //   CIVIL ACTION NO. 1:14CV160
                             (Judge Keeley)

THE FEDERAL BUREAU OF INVESTIGATION,

        Defendant.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT NO. 28]

Pending before the Court are cross motions for summary judgment filed by the parties. The first is the motion for summary judgment (dkt. no. 26), filed by the defendant, the Federal Bureau of Investigation ("FBI"). The second the motion for summary judgment (dkt. no. 28), filed by the plaintiff, Eric M. Lapp ("Lapp"). For the reasons that follow, the Court **GRANTS** the defendant's motion and **DENIES** the plaintiff's motion.

BACKGROUND

I.    Factual Background

The plaintiff, Lapp, is the owner of Fingerprint Solutions, Inc. ("FSI") (dkt. no. 1 at 1). FSI has "expertise in the acquiring, storage, and submission of fingerprints to authorized recipients." Id. Lapp's complaint alleges that various Public Housing Agencies ("PHA") have informed the FBI that they desire to submit fingerprints to the FBI's Criminal Justice Information

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

Services Division ("CJIS") for "noncriminal justice purposes." Id.

The PHAs seek to utilize the CJIS system to cross-reference

fingerprints with the FBI's criminal history database in order to

"assist them in their applicant screening, lease enforcement and

eviction responsibilities." Id. at 2.

   Lapp filed a Freedom of Information Act ("FOIA") request with

the FBI on March 23, 2013, seeking a variety of information

relating to the PHAs and their fingerprint submissions to the FBI's

CJIS. Id. Specifically, Lapp's request sought:

   1.   a complete listing of addresses of public housing
        agencies/authorities (PHA) that have been approved
        to submit fingerprints to the FBI's Criminal
        Justice Information Services (CJIS) Division for
        applicant screening, lease enforcement, and
        eviction purposes;
   2.   the addresses of all PHAs that have requested
        [Originating Agency Identifiers[1]] pursuant to
        legislative or regulatory authority;
   3.   if reasonably available, the number of fingerprint
        submissions that were provided to the CJIS Division
        by each authorized PHA during Calendar Years 2011
        and 2012;
   4.   if reasonably available, the address of the

_____

   [1]The parties identify these as "ORIs." ORIs are "a unique nine
character identifier developed by the FBI National Crime
Information Center ("NCIC")and assigned to qualified agencies to
access CJIS systems. This code is used by agencies to track NCIC
submissions and for billing purposes. An ORI is akin to a User ID;
there is no separate PIN or password." (Dkt. No. 21 at 3).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

> channeling agency[2] (public or private) used by each PHA; and
>
> 5. if reasonably available and not a national security issue, the specific ORI that has been issued to each PHA.

(Dkt. No. 1-1 at 1-2) (each of the five categories requested are hereinafter referred to as "Request #_"). Lapp contends that the information he seeks would "permit coordination with those public housing agencies that have expressed a desire to submit fingerprints to the FBI's CJIS Division for comparison to fingerprints associated with the criminal history database" (dkt. no. 1 at 1). Essentially, Lapp's FOIA request is a commercial data mining endeavor.[3]

---

[2]The FBI provides the following definition of an FBI-approved channeler:

> An FBI-approved Channeler is a contractor that serves as the conduit for submitting fingerprints to the FBI and receiving the FBI criminal history record information (CHRI), on behalf of an Authorized Recipient (AR), for authorized noncriminal justice purposes.

See https://www.fbi.gov/about-us/cjis/cc/current-initiatives/channeler-faqs.

[3]This is clear from Lapp's claim that the delay in receiving the requested information has adversely impacted his business. Although requests under the FOIA are not forbidden simply because they are for commercial purposes, the FOIA's purpose is to encourage public disclosure of information so citizens may understand what their government is doing." Office of the Capitol Collateral Counsel v. Dept. of Justice, 331 F.3d 799 (11th Cir. 2003).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

The FBI denied Lapp's request by letter dated May 9, 2013, noting that the requested records were "not searchable in [their] indices" (dkt. no. 1-2 at 2). Moreover, the letter explained that FOIA does not require the FBI to "answer inquiries, create records, conduct research, or draw conclusions concerning queried data." Id. at 1. Instead, "FOIA merely requires agencies to provide access to reasonably described, nonexempt records." Id. Finally, the letter informed Lapp that he could appeal the decision to the Office of Information Policy ("OIP") within sixty days Id. at 2. Lapp filed a letter of appeal, which was received by the OIP on June 18, 2013 (dkt. no. 1-3; dkt. no. 1-4).

By letter dated March 19, 2014, the OIP denied Lapp's appeal after a "full review" (dkt. no. 1-5). The denial affirmed the FBI's initial denial and reiterated that the FOIA does not require agencies to answer questions or create records. Id. at 1. It concluded by informing Lapp that he could file a lawsuit in federal court or, alternatively, engage in mediation services provided by the Office of Governmental Information Services ("OGIS").[4] Lapp chose to pursue mediation, emailing his formal request to the OGIS

---

[4]The denial letter notes that mediation is "non-exclusive alternative to litigation" that "does not affect [one's] right to pursue litigation." (Dkt. No. 1-5 at 1).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

on June 6, 2014 (dkt. no. 1-6). The OGIS responded to Lapp's request by seeking additional information (dkt. no. 1-7), which Lapp provided on June 11, 2014 (dkt. no. 1-8).[5] On August 14, 2014, Lapp emailed the OGIS inquiring as to the status of his mediation (dkt. no. 1-10). The OGIS responded via email dated August 20, 2014, which simply notes that a facilitator at OGIS had been assigned to Lapp's case, and that she was proceeding to work on his request (dkt. no. 1-11). The parties provided no further correspondence, but on November 18, 2014, the FBI provided Lapp with 119 pages of responsive documents (dkt. no. 25 at 3; dkt. no. 28 at 10).

## II. Procedural Background

Lapp filed his complaint with this Court on September 1, 2014 (dkt. no. 1). The complaint seeks: (1) an order by the Court requiring the FBI to provide the requested documents; (2) expedited proceedings pursuant to 28 U.S.C. § 1657; (3) costs and attorney's fees pursuant to 5 U.S.C. § 522(a)(4)(E); and (4) other just and proper relief, including "reasonable business losses." Id. at 3. In its answer, the FBI generally denies Lapp's allegations and states

---

[5]Lapp also attached a discovery request titled "Request for FBI Admissions." (Dkt. No. 1-9).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

that the documents speak for themselves (dkt. no. 10).

On January 13, 2015, the FBI filed its motion to stay discovery and for a continuance of this Court's first order and notice regarding discovery and scheduling (dkt. no. 12). According to the FBI, this Freedom of Information Act case should be decided by way of dispositive motions, thus making discovery unnecessary. Moreover, the FBI asserted in its motion that it was "diligently collecting information and drafting affidavits to submit to this Court in a Motion for Summary Judgment." Id. at 1. The Court granted the motion on January 21, 2015, to the extent it sought a stay of any discovery disclosures (dkt. no. 14), and also set a scheduling conference for March 4, 2015.

At the scheduling conference, the Court ordered the FBI to file its declaration on or before March 20, 2015, and scheduled a follow up status conference for March 26, 2015 (dkt. no. 18). Pursuant to that order, the FBI timely filed the declaration of David M. Hardy ("Hardy"), Section Chief of the Record/Information Dissemination Section, Records Management Division ("RIDS/RMD"), for its Winchester, Virginia, facility (dkt. no. 21). The Court followed with a status conference on March 27, 2015, during which it ordered the parties to file any additional declarations by April

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

24, 2015, and also furnished a briefing schedule for any motions for summary judgment (dkt. no. 24).

In accordance with the Court's order, the FBI filed the affidavit of J. Kevin Grant ("Grant"), Chief, Administrative Unit, Resource Management Section, CJIS Division of the FBI, in Clarksburg, West Virginia (dkt. no. 25). In addition, both parties filed their motions for summary judgment on May 29, 2015 (dkt. nos. 26 and 28). Both motions are fully briefed and ripe for review.

**LEGAL STANDARD**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

U.S. 242, 249 (1986).

To survive a motion for summary judgment in a FOIA action, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C.Cir. 1978); Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C.Cir. 2001) (quoting Goland). "A defendant agency has the burden of establishing the adequacy of its search and that any identifiable document has either been produced or is subject to withholding under an exemption." Havemann v. Colvin, 2015 WL 7423196, at *1 (4th Cir. 2015).

The agency may meet its burden through the production of affidavits describing the manner in which it undertook the requested information search. See id. In order to invoke an exception, however, the agency's affidavits "must be relatively detailed and nonconclusory." Id. (citing Simmons v. United States Dep't of Justice, 796 F.2d 709, 711–12 (4th Cir. 1986)). The court may presume "the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." Id. (citing Bowers v. United States Dep't of Justice, 930 F.2d 350, 357 (4th

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

Cir. 1991)). In order to overcome the presumption, "a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." Id. (citing Miller v. United States Dep't of State, 779 F.2d 1378, 1384 (8th Cir. 1985)).

## APPLICABLE LAW

Under the Freedom of Information Act ("FOIA"), federal agencies "shall make [agency] records promptly available to any person," so long as the person's request "(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 522(a)(3)(A). Courts have long held that "'FOIA reflects a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" Id. (quoting Dep't of Defense v. FLRA, 510 U.S. 487, 494 (1994)). Notably, the FOIA does not require an agency to create or retain any document; rather, it only "'obligates them to provide access to those which it in fact has created and retained.'" Turner v. U.S., 736 F.3d 274, 283 (4th Cir. 2013) (quoting Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980)).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

There are, however, certain enumerated exemptions from the FOIA's mandate to disclose. See 5 U.S.C. § 522(b)(1)-(9); New Hampshire Right to Life v. Dep't of Health and Human Svcs., 13 S. Ct. 383, 383 (2015). The Court must decide as a matter of law whether a document falls within one of the exemptions. Wickwire Gavin, P.C. v. U.S. Postal Service, 356 F.3d 588, 591 (4th Cir. 2004). In addition, courts must construe the FOIA's exemptions narrowly and place the burden on the agency to show that its exemptions are proper. Id. (citing 5 U.S.C. § 552(a)(4)(B); J.P. Stevens Co. v. Perry, 710 F.2d 136, 139 (4th Cir. 1983)).

## ANALYSIS

The FBI assets that it is entitled to summary judgment because no material facts are in dispute and because it has demonstrated that each document falling within Lapp's request either has been produced, is unidentifiable, or is exempt from the FOIA. Dkt. No. 27 at 3 (citing Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001) for summary judgment standard). Specifically, of the five categories of information Lapp has requested, the FBI contends that it has fully responded to Requests #1 and #2, and has properly withheld the ORIs sought in Request #5 as exempt under 5 U.S.C. § 522(b)(7)(E). In addition, the FBI

10

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

claims that documents responsive to Requests #3 and #4 do not exist, and the FOIA does not require it to create such documents. Thus, according to the FBI, it has fulfilled Lapp's FOIA request to the fullest extent required by law and his complaint is now moot.

Lapp's motion, while conceding that Requests #1 and #2 have been satisfied, contends that he is entitled to summary judgment on three matters. First, he claims that the FBI has erroneously classified the ORIs sought in Request #5 as exempt under 5 U.S.C. § 522(b)(7)(E). Next, Lapp contends that the FBI has improperly withheld Request #3, seeking the address of the specific channeling agency each PHA has used, and Request #4, seeking the number of fingerprints each PHA has submitted to CJIS during 2011 and 2012. Finally, Lapp's motion asserts that he is entitled to recover reasonable attorney fees and litigation costs against the United States pursuant to 5 U.S.C. § 522(a)(4)(E)(ii).

As there is no dispute that Requests #1 and #2 have been fully satisfied, the Court need not address those requests further. The It must address, however, (1) whether the ORIs sought in Request #5 are exempt from disclosure, (2) whether the FBI has improperly failed to provide documents responsive to Requests #3 and #4, and (3) whether Lapp is entitled to attorney fees and litigation costs

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]

under the FOIA.

## I.    The FBI Properly Exempted the ORIs from Disclosure

Under the FOIA, agencies must disclose requested records,

except those that fall within one of nine exemptions outlined in 5

U.S.C. § 552(b). See Milner v. Department of Navy, 562 U.S. 562,

565 (2011). Among those exemptions are:

> certain records or information compiled for law
> enforcement purposes, but only to the extent that the
> production of such law enforcement records or information
> . . . (E) would disclose techniques and procedures for
> law enforcement investigations or prosecutions, or would
> disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be
> expected to risk circumvention of the law . . . .

5 U.S.C. § 552(b)(7) (hereinafter referred to as the "7(E)

exemption"). The declaration of James Hardy clearly explains the

FBI's basis for exempting the ORIs under the 7(E) exemption:

> The records responsive to plaintiffs request contain
> information pertaining to access to the CJIS systems.
> CJIS is the focal point and central repository for
> criminal justice information services. It possesses the
> world largest repository of criminal fingerprints and
> history records. CJIS provides an array of services that
> are a lifeline to law enforcement and cornerstone of
> protecting the nation.
> . . .
> [A]n ORI is a unique nine character identifier and/or
> access code developed by the FBI NCIC. ORIs are provided
> only to authorized entities to access and/or add data to
> CIJS systems, as appropriate in given situations. PHAs
> are provided access to CJIS system and are entities

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

       authorized to receive criminal history record
information to fulfill its statutory obligations.
Consequently, each PHA has its own and unique ORI
number. The PHA's specific ORI number allows the PHA
access to CJIS systems, including access to NCIC
criminal history information through its local or state
law enforcement agencies and/or its submission of
applicant fingerprint cards to CJIS.

(Dkt. No. 21 at 9-10).

Thus, according to the FBI, "[d]isclosure of PHA ORIs to the public could reasonably be expected to risk circumvention of the law by allowing individuals and/or entities unauthorized access to CJIS systems and/or NCIC criminal record information." (Dkt. No. 27 at 8 (citing Hardy Declaration, at ¶ 25; Grant Declaration, at ¶¶ 26, 28). Moreover, the FBI asserts that lawbreakers could utilize this information to access the CJIS systems and obtain non-public information, and to "potentially add/manipulate data to their advantage and criminal interests." Id. (citing Hardy Declaration, at ¶ 25). Finally, both Hardy and Grant stated in their declarations that "unauthorized access to these CJIS systems presents privacy concerns, since information in these systems pertains to individuals nationwide." Id. (citing Hardy Declaration, at ¶ 25; Grant Declaration, at ¶ 28).

Lapp, on the other hand, contends that the FBI's reasons for exempting the ORIs are "ludicrous" (dkt. no. 28 at 23). He

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

vehemently asserts that "ORIs are not compiled for law enforcement purposes! How could they be?" Id. Lapp goes on to state that, even though an ORI is one of the requirements to accessing CJIS information, it is but one of "several hurdles." Id. at 24. Finally, Lapp states that "[i]t is not reasonable to believe the criminal element" could utilize the ORI to circumvent the law. Id. The Court discounts Lapp's underestimation of the criminal element and gives deference to the declarations of FBI professionals in that arena over the bare conclusory assertions of Lapp. See e.g. Havemann v. Colvin, 2015 WL 7423196, at *1 (4th Cir. 2015) (noting that the court may presume the credibility of agency declarations absent any indication of bad faith). Furthermore, the Court is confounded by Lapp's assertion that, just because a criminal actor would have to jump over additional hurdles, the FBI is required to give them a boost over the first hurdle by releasing the ORIs.[6]

Other courts are in agreement. For example, in Brown v. F.B.I.

---

[6]Lapp's motion also provides various circumstances where "stray ORIs" have been found on the internet or other public locations. He fails to explain, however, how the imprudent disclosure by an entity of their own ORI, or "stray" exposures of other ORIs, somehow obligates the FBI to provide other ORIs through a FOIA request. This is akin to claiming that, because some social security numbers can be found in the public arena, the Social Security Administration must release them all through a FOIA request.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

the DEA sought to exempt vehicle identification numbers ("VINs") from a FOIA request. 873 F.Supp.2d 388 (D.D.C. 2012). There, the court held that "[p]ublic disclosure of VINs could allow clever criminals to circumvent the law by determining which vehicles are used in DEA's law enforcement operations." Id. at 403. The ORIs in this case, as the VINs in Brown, are compiled by their respective agencies for law enforcement purposes. The VINs are collected to denote which vehicles are used by the DEA in law enforcement operations; the ORIs are compiled to provide authorized users access to criminal databases at the FBI.

Based on the foregoing, the Court **FINDS** that the FBI properly exempted the ORIs under the 7(E) exemption.[7] Accordingly, it **GRANTS**

---

[7]The Court must note that, although the FBI did not explicitly rely on exemption of the ORIs under 5 U.S.C. § 552(b)(7)(C) (the "7(C) exemption"), it did make reference to the privacy concerns implicated by disclosure of the ORIs. The 7(C) exemption covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Brown, 873 F.Supp.2d at 403 (quotations omitted). "Even if a particular privacy interest is minor, nondisclosure is justified where ... the public interest in disclosure is virtually nonexistent." Id. The Court cannot fathom how production of the ORIs would add any value to Lapp's or any other person's understanding about what their government is up to. Accordingly, the Court would also find that the FBI would be

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

the FBI's motion for summary judgment and **DENIES** Lapp's motion for summary judgment as they pertain to the disclosure of the ORIs.

## II. Documents Responsive to Requests #3 and #4 Do Not Exist and the FBI is not Required to Create Them

In Requests #3 and #4, Lapp seeks, respectively, the number of fingerprint requests each PHA submitted to CJIS in 2011 and 2012, and which channeling agency each PHA utilized.[8] The FBI asserts that there are no documents containing this information (dkt. no. 29 at 4; dkt no. 27 at 9). In Hardy's declaration, he states that this information "is not readily available to CJIS and it cannot be rendered with a few keystrokes" (dkt. no. 21 at 11). He goes on, explaining that, "[i]n order to provide this information to plaintiff, CJIS would have to contact multiple sources to retrieve the information and would then have to create a special report to capture the specific information requested." Id.

Grant's declaration further explains the non-existence of

_____

warranted to exempt disclosure of the ORIs under the 7(C) exemption.

[8]Although Lapp specifically requests "the address of the channeling agency (public or private) used by each PHA," he admits that the FBI supplies a public list of the channeling agencies, including links to each of their websites (dkt. no. 28 at 13-14). Thus, it appears evident that Lapp seeks a listing of which channeler(s) each PHA utilizes.

documents listing the channeling agencies each PHA used:

> This is statistical information that is not already
> compiled with CJIS. Neither the CJIS Division, nor the
> FBI as a whole, maintains a document which contains this
> information, and agencies are not required to create
> records under the FOIA. . . . In order to compile the
> requested information in the manner Plaintiff has
> requested, the FBI would be required to conduct inquiries
> (including many outside the FBI), conduct research, and
> compile that information to create a new document. . . .
> As part of its application for an ORI, a PHA may, but
> need not submit the name of a channeling agent that PHA
> intends to use. These application are maintained
> electronically in the CRS, however, they are not readily
> searchable."

(Dkt. No. 25 at 4-5). Grant's declaration also discusses the non-

existence of documents containing the number of fingerprint

submissions by each PHA:

> The ORI is assigned to qualified agencies to access the
> CJIS systems and is utilized for billing purposes. The
> CJIS Division collects user fees for some fingerprint
> submissions by a civil agency such as a PHA. Typically,
> these fees are collected from the channeling entity,
> which could be either a state government or a private
> business, and not from the PHA itself. . . . Even if the
> FBI were required to create a document using the user fee
> information, which it is not, an employee would have to
> audit the user fees per PHA and per channeling agent,
> mathematically manipulate that information, and create a
> new statistical report that does not exist in the CJS
> Division, nor in the FBI's CRS.

Id. at 6.

Lapp disputes the FBI's claims. First, he concludes that the

"channeler's identity (per PHA) should be readily available," and

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

that "it is beyond belief" that the FBI would not know which
channeler each PHA is using. Next, while admitting that, "whether
the requested numbers [of fingerprint submissions] are 'readily
available to CJIS' is totally within the FBI's knowledge," Lapp
simultaneously expresses doubt, and insinuates that lack of this
information would "approach malfeasance" and breach of "fiduciary
duties" (dkt. no. 28 at 27).[9]

It has long been held that the FOIA "does not obligate
agencies to create or retain documents; it only obligates them to
provide access to those which it in fact has created and retained."
Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S.
136, 152 (1980) (citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S.
132, 161-62 (1975)); see also Weisberg v. U.S. Dept. of Justice,
705 F.2d 1344, 1363 (D.C. Cir. 1983) ("The Supreme Court, however,
has made clear that FOIA puts an agency under no obligation to
create documents. . . ."). Moreover, the FOIA does not require
agencies "to dig out all the information that might exist, in

_____

[9]In his reply brief to the FBI's response to his motion for
summary judgment, Lapp also admits that he is "without absolute
knowledge that the identity of the channeling agency used by each
approved PHA is maintained in a database under the FBI's control,
but Defendant has not provided convincing evidence that it does
not." The FBI, however, has produced presumptively credible
evidence—the declarations of Hardy and Grant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

whatever form or place it might be found, and to create a document that answers plaintiff's question." <u>Frank v. U.S. Dept. of Justice</u>, 941 F.Supp. 4, 5 (D.D.C.,1996); <u>see also</u> <u>Amnesty Int'l v. CIA</u>, 2008 WL 2519908 at *12-13 (S.D.N.Y. June 19, 2008) (noting that compiling a list and searching for entries on that list was essentially answering the requestor's questions instead of providing responsive documents). Nor does it require agencies to "answer questions disguised as a FOIA request." <u>Hudgins v. IRS</u>, 620 F.Supp. 19, 21 (D.D.C. 1985).

Lapp counters, stating that "[c]ourts have ruled that agencies may be required to perform relatively simple computer searches to locate requested records, or for the agencies to demonstrate why such searches are unreasonable in a given case." In support of this contention, he cites one case, <u>Thompson Publ'g Group, Inc. v. Health Care Fin. Admin.</u>, 1994 WL 116141, at *1 (D.D.C. Mar. 15, 1994). This case actually provides little support for Lapp's contentions. Because the <u>Thompson</u> court ultimately ruled the records there were properly exempted from disclosure, it is only in dicta that it stated the FOIA "require[s] [agencies] to conduct

relatively simple computer searches . . . ."[10] Id. at *2. Notably, the Thompson court tempered even that statement: "This acknowledgement that an agency is required to conduct relatively simple computer searches is limited to retrieval of parts of existing records and does not require an agency to conduct analyses of existing records." Id. (emphasis added).

Based on the declarations of Hardy and Grant, the FBI would be required to "dig out" the answer to Lapp's questions regarding the channelers used and number of fingerprint submissions from a variety of locations, as well as requiring them to research outside the FBI. Moreover, it would require them to perform calculations relating to the number of fingerprint submissions based on accounting data inside and outside the FBI. This is beyond what the FOIA requires. Lapp does not merely seek "documents" prepared or retained by the FBI; he seeks "answer[s] [to] questions disguised as a FOIA request."[11] Hudgins, 620 F.Supp. at 21.

_____

[10] Of course, the FBI did just that anyway; it expanded its search after a request from RIDS/RMD, which is what lead to the responsive documents eventually forwarded to Lapp.

[11] Indeed, Lapp persists throughout his filings in equating "information" with "documents," in that, according to him, if the information exists in some form or location that the FBI could access, they must sort it, compile it, and disclose it to him in some newly created form. This is beyond the scope of the FOIA. See

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

As discussed above, the Court may, and in this case does, presume that both Hardy's and Grant's declarations are credible, and notes that it has no reason to question the good faith of the FBI. See Havemann, 2015 WL 7423196, at *1. Although Lapp could overcome that presumption "by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith," he has failed to do so, instead making presumptions and conclusory allegations. Id. (emphasis added).

As a consequence, the Court **GRANTS** the FBI's motion and **DENIES** Lapp's motion, insofar as it pertains to Requests #3 and #4.

**III. Lapp is not Entitled to Monetary Damages or Reasonable Attorney Fees and Litigation Costs**

The FBI seeks summary judgment on Lapp's claims for monetary relief. First, it claims that Lapp is not entitled to damages for "reasonable business losses" under the FOIA (dkt. no. 1 at 3). Lapp's response concedes that he has "found no cases to support monetary relief except for attorney fees and court costs" (dkt. no. 30 at 20). Instead, Lapp asks this Court to exercise its inherent powers to grant his prayer for monetary relief.

---

e.g. Frank, 941 F.Supp. at 5.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]

Courts have consistently held that relief under the FOIA is limited to injunctive relief and there is no provision for the award of monetary damages. See e.g. Cornucopia Institute v. U.S. Dept. of Agriculture, 560 F.3d 673, 675 (7th Cir. 2009) ("Plaintiffs are not entitled to monetary damages for violations of FOIA because 5 U.S.C. § 552(a)(4)(B) authorizes only injunctive relief."); Vasquez v. Miles, 2002 WL 31688941, at *1 (5th Cir. 2002) (noting that money damages are unavailable under the FOIA); Thompson v. Walbran, 990 F.2d 403, 404 (8th Cir. 1993) (same); Cooper v. Meese, 1989 WL 25765, at *1 (6th Cir. 1989) ("An award of damages is not authorized for an alleged violation of his Freedom of Information Act under 5 U.S.C. § 552."). This Court declines to stray from such clear precedent, and accordingly, **CONCLUDES** that Lapp is not entitled to monetary damages under the FOIA. It therefore **GRANTS** the FBI's motion for summary judgment insofar as it pertains to such damages.

The FBI also seeks summary judgment on Lapp's claim for reasonable attorney fees and litigation costs, claiming that he cannot "substantially prevail" within the meaning of 5 U.S.C. § 552(a)(4)(E)(ii). Lapp's entire response to this particular issue is found, not in the analysis section of his response, but in the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

conclusion section, wherein he states:

> [He] disagrees. Defendant refused to release any responsive information until after Plaintiff had exhausted his administrative remedies and had filed the instant lawsuit. Moreover, there is additional responsive data that has been unjustifiably withheld.

(Dkt. No. 30 at 20). Thus, Lapp makes little effort to refute any of the FBI's legal arguments on this issue.

Subsection (a)(4)(E) of the FOIA provides a mechanism for a requestor to recover reasonable attorney fees and litigation costs under certain circumstances:

> (i)  The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--
>> (I)  a judicial order, or an enforceable written agreement or consent decree; or
>> (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E). The Court undertakes a two-part analysis to determine first, whether the requestor is _eligible_ to receive an award, and second, whether they are _entitled_ to receive an award. See Electronic Privacy Information Center v. National Security Agency, 87 F.Supp.3d 223, 227 (D.D.C. 2015) (noting that the D.C.

Circuit has construed the statute to require the two-prong test and
collecting cases).

The eligibility prong requires the requestor to show that they
"substantially prevailed" by getting the relief they sought through
"(I) a judicial order, or an enforceable written agreement or
consent decree; or (II) a voluntary or unilateral change in
position by the agency, if the complainant's claim is not
insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Here, Lapp has not
received relief through a judicial order, or an enforceable written
agreement or consent decree under subsection (I), but he may still
assert that he is eligible under subsection (II).

Lapp, albeit in a footnote, claims that he received his
relief, the 119 pages of responsive documents, as a result of a
voluntary or unilateral change in position by the FBI (dkt. no. 30
at 4, fn. 5). Specifically, Lapp claims that the filing of his
complaint was the catalyst for his relief and that, but for his
filing of that complaint, the FBI would not have released the
responsive documents. Thus, under the catalyst theory,[12] the FBI's

---

[12]The catalyst theory held that "plaintiffs were eligible for
a fee award if the lawsuit substantially caused the agency to
release the requested records," thereby satisfying subsection (II).
Davis v. U.S. Dept. of Justice, 610 F.3d 750, 752 (D.C. Cir. 2010).

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]

release of the responsive documents <u>as a result</u> of Lapp's lawsuit would entitle him to attorney fees and litigation costs under subsection (II). <u>See</u> <u>Davis v. U.S. Dept. of Justice</u>, 610 F.3d 750, 752 (D.C. Cir. 2010) (noting that, although the United States Supreme Court "rejected the catalyst theory in <u>Buckhannon Board & Care Home, Inc. v. W. Va.Dept. of Health & Human Resources</u>, 532 U.S. 598 (2001)," Congress's subsequent 2007 amendments to the FOIA "establish[ed] that the catalyst theory applied in FOIA cases").

Unfortunately for Lapp, the evidence in this case belies his assertions. Grant's declaration states that CJIS was contacted in June, 2014, by the OGIS, through a request by RIDS/RMD, as part of their ongoing mediation efforts (dkt. no. 25 at 3). The ongoing mediation efforts are further evidenced by the email correspondence between Lapp and the OGIS facilitator, Christa Lemelin, dated August 20, 2014, in which she clearly indicates that she is in the process of handling Lapp's request for assistance. As part of the mediation efforts, and after further consultation with persons at RIDS/RMD familiar with certain documents, CJIS, in September, 2014, was able to sort through and segregate information into 119 documents responsive to Lapp's request. These pages were forwarded to Lapp on November 18, 2014.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

Lapp asserts that the summons served in this suit informed the FBI that they were required to respond to the complaint by serving an answer with 60 days or risk default and that, because the FBI provided Lapp the responsive documents exactly 60 days after service, this somehow proves that the lawsuit must have been the catalyst for the release.

The Court disagrees. Notwithstanding Lapp's confusion between requiring an answer and providing documents responsive to a FOIA request, the evidence establishes that efforts by the FBI to locate and provide responsive documents to Lapp were ongoing prior to the filing of his suit. Grant's declaration and correspondence between the OGIS and Lapp show that the FBI continued efforts, at least as early as June, 2014, to provide a response to as many of Lapp's requests as possible, which it ultimately did.

The Court **FINDS** that Lapp has failed to meet the first prong of eligibility, thus, it need not address the second prong of entitlement. As a consequence, Lapp has not substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(i)(II), and is, therefore, not eligible for an award of attorney fees and litigation costs. Accordingly, the Court **GRANTS** the FBI's motion for summary judgment insofar as it pertains to Lapp's claim for attorney fees and

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 28]**

litigation costs.

<u>**SUMMARY OF THE COURT'S RULINGS**</u>

In summary, for the reasons discussed, the Court:

1.      **DENIES** Lapp's motion for Summary Judgment in its entirety;

2.      **GRANTS** the **FBI's** motion for summary judgment in its entirety;

3.      **DISMISSES as MOOT** Lapp's complaint as it pertains to information sought in Requests #1 and #2 of Lapp's FOIA request; and

4.      **DISMISSES with PREJUDICE** the remainder of Lapp's complaint.

It is so **ORDERED.**

Finally, as a consequence of its rulings, the Court **CANCELS** the status conference in this matter, currently scheduled for Wednesday, February 24, 2016.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: February 23, 2016

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

27